# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| AARON BOONE CORNETT, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17cv00035 |
| | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, | ) | |
|  Acting Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
|     Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Aaron Boone Cornett, ("Cornett"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq*. (West 2012 & 2018 Supp.). Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th

Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Cornett protectively filed an application for SSI on June 28, 2013, alleging disability as of June 28, 2013, based on an attention deficit hyperactivity disorder, ("ADHD"); auditory processing disorder; obsessive compulsive disorder, ("OCD"); anxiety disorder; a learning disability; panic attacks; and speech impairment. (Record, ("R."), at 198-201, 209, 213, 230-31.) The claim was denied initially and upon reconsideration. (R. at 114-16, 119-20, 125-27, 129-31.) Cornett then requested a hearing before an administrative law judge, ("ALJ"). (R. at 132.) A hearing was held on July 13, 2016, at which Cornett was represented by counsel. (R. at 53-89.)

By decision dated September 1, 2016, the ALJ denied Cornett's claim. (R. at 38-48.) The ALJ found that Cornett had not engaged in substantial gainful activity since June 28, 2013, the alleged onset date of disability. (R. at 40.) The ALJ determined that Cornett had severe impairments, namely borderline intellectual functioning; autism; ADHD; a learning disability; anxiety; depression; and OCD, but she found that Cornett did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. (R. at 40-41.) The ALJ found that Cornett had the residual functional capacity to perform a full range of work at all exertional levels. (R. at 44.) The ALJ also found that Cornett could perform only simple, routine and repetitive tasks that required only occasional interaction with co-workers and supervisors in an environment free from team work and over-the-shoulder supervision; that did not require interaction with the general public or

fast-paced production requirements; and that required him to make no more than few, if any, work-related decisions. (R. at 44.) The ALJ found that Cornett had no past relevant work. (R. at 46.) Based on Cornett's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Cornett could perform, including the jobs of a dining room attendant/bus person, a vehicle cleaner, janitorial cleaning occupations, all at the medium[1] exertional level; as well as cleaning occupations, a vehicle cleaner and a photocopy machine operator, all at the light[2] exertional level; and a document preparer at the sedentary[3] level of exertion. (R. at 47-48.) Thus, the ALJ concluded that Cornett was not under a disability as defined by the Act, and was not eligible for SSI benefits. (R. at 48.) *See* 20 C.F.R. § 416.920(g) (2018).

After the ALJ issued her decision, Cornett pursued his administrative appeals, (R. at 195), but the Appeals Council denied his request for a review. (R. at 1-6.) Cornett then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. See 20 C.F.R. § 416.1481(2018). This case is before this court on Cornett's motion for summary

---

[1] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2018).

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2018).

[3] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing is required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 416.967(a) (2018).

judgment filed February 15, 2018, and the Commissioner's motion for summary judgment filed April 19, 2018.

## II. Facts

Cornett was born in 1994, (R. at 47, 198), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c). Cornett has a high school education. (R. at 47, 58-59, 214.) He stated that he was enrolled in special education classes. (R. at 59.) Cornett stated that he had a difficult time remembering what he read. (R. at 59.) He stated the he could perform basic math, such as adding and subtracting. (R. at 60.) Cornett stated that he took welding classes in vocational school, but he did not obtain his certification. (R. at 67, 75, 214.) Cornett stated that he played video games, went fishing, drove four-wheelers and performed occasional light household chores, which included dusting and vacuuming, as well as helping his father mow grass. (R. at 60, 71, 224.) He stated that being around people caused him to have panic attacks. (R. at 65.) Cornett stated that he took medication for anxiety, which helped "a little bit." (R. at 65.)

Cornett's mother, Donna Cornett, ("D. Cornett"), also testified at Cornett's hearing (R. at 72-82.) D. Cornett stated that Cornett was enrolled in special education classes and received speech therapy. (R. at 72-73.) D. Cornett stated that Cornett could not process multi-step instructions. (R. at 78-79.) She stated that Cornett had most difficulty with reading; however, he struggled with all subjects. (R. at 73.) D. Cornett stated that she would not allow Cornett to obtain his driver's license because he was too impulsive and would "kill himself or somebody else." (R. at 75-76.) She stated that any change in Cornett's surroundings would trigger panic attacks. (R. at 79-80.)

Cecilia Thomas, a vocational expert, also testified at Cornett's hearing. (R. at 83-88.) Thomas was asked to consider a hypothetical individual of Cornett's age, education and work history, who could perform work at all levels of exertion; who could understand, remember and carry out simple, routine, repetitive tasks and respond appropriately to occasional interaction with co-workers and supervisors in an environment free from team work and over-the-shoulder supervision; that did not require interaction with the general public or performance of fast-paced production; and that did not require him to make more than a few, if any, work-related decisions. (R. at 83-84.) Thomas stated that the individual could perform medium, light and sedentary jobs that existed in significant numbers in the national economy, including those in food service areas, cleaning of vehicles and equipment, janitorial cleaning, photocopy machine operation and document preparation. (R. at 84-86.) Thomas stated that there would be no jobs available should the individual be precluded from all social interaction. (R. at 86-87.)

In rendering her decision, the ALJ also reviewed records from Tazewell County Public Schools; Juli Harper, Ed.S., a school psychologist; Bradley T. Kinder, M.S., a licensed professional counselor; Dr. Eric Shrader, M.D.; David T. Ellis, Psy.D., a licensed psychologist; Louis Perrott, Ph.D., a state agency psychologist; and Dr. Sreeja Kadakkal, M.D., a state agency physician. Cornett's attorney also submitted medical records from Ellis, Dr. Shrader and Pamela S. Tessnear, Ph.D., a licensed clinical psychologist, to the Appeals Council.[4]

---

[4] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-6), this court must also take these new findings into account when determining whether substantiated evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

On February 17 and 22, 2012, Juli Harper, Ed.S., a school psychologist, evaluated Cornett to determine if he continued to qualify for special education services. (R. at 296-99.) Cornett was 17 years old and was in the tenth grade. (R. at. 296.) The Wechsler Adult Intelligence Scale – Fourth Edition, ("WAIS-IV"), was administered, and Cornett obtained a verbal comprehension score of 76; a perceptual reasoning score of 84; a working memory score of 74; a processing speed score of 94; and a full-scale IQ score of 78. (R. at 297.) This full-scale IQ score placed Cornett in the borderline range of intellectual functioning. (R. at 298.) Harper reported that Cornett struggled to comprehend written material. (R. at. 298-99.) The Wechsler Individual Achievement Test, Third Edition, ("WIAT-III"), was administered, and Cornett's reading comprehension and math skills fell within the low range, demonstrating significant difficulty completing these tasks. (R. at 298-99.) Harper opined that Cornett continued to require special education services. (R. at 299.)

On March 5, 2012, records from Tazewell County Public Schools show that Cornett demonstrated weakness in the area of reading comprehension and math. (R. at 253.) It was reported that Cornett had extreme difficulty staying focused and on task; he required constant prompting to start and finish assignments; he required repeated directions; and his cognitive ability scores ranged from borderline to the average range. (R. at 254-55, 299.) Cornett was found to have a disability under the disability category of "Specific Learning Disabled;" therefore, special education services were continued. (R. at 255.)

On December 30, 2013, Bradley T. Kinder, M.S., a licensed professional counselor, evaluated Cornett at the request of Disability Determination Services. (R. at 300-05.) Kinder reported that Cornett's hygiene, speech and mood were

within normal limits; he was cooperative; he made good eye contact; his thought processes were goal directed and unimpaired; no perceptual disturbances were noted; his judgment and insight were fair; his fund of knowledge was fair; and he displayed no difficulty with remote or immediate recall. (R. at 300-01.) Kinder reported that Cornett presented with no mental health related problems, aside from borderline intellectual functioning. (R. at 302.) The WAIS-IV was administered, and Cornett obtained a full-scale IQ score of 78; a verbal comprehension score of 78; a perceptual reasoning score of 91; a working memory score of 77; and a processing speed score of 81. (R. at 303-04.) Kinder noted that Cornett presented with no symptoms consistent with ADHD, OCD or depression. (R. at 304.) Cornett reported that he wanted to work. (R. at 301.) Kinder reported that he did have concerns about Cornett's ability to manage his own funds. (R. at 304.) Kinder diagnosed ADHD, not otherwise specified, by history; mood disorder, not otherwise specified, by reported history; mood disorder, not otherwise specified, provisional; and borderline intellectual functioning. (R. at 305.) Kinder assessed Cornett's then-current Global Assessment of Functioning, ("GAF"),[5] score at 71.[6] (R. at 305.) Kinder opined that Cornett could perform sustained complex tasks; maintain regular attendance; work without routine supervision; interact with the public; and would not be overwhelmed by routine stressors encountered in the work place. (R. at 304.)

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 71 to 80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors ...; no more than slight impairment in social, occupational, or school functioning...." DSM-IV at 32.

On January 21, 2014, Louis Perrott, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Cornett had mild restrictions on his activities of daily living, experienced only mild difficulties in maintaining social functioning; experienced moderate difficulties in maintaining concentration, persistence or pace; and had experienced no repeated episodes of extended-duration decompensation. (R. at 95-96.)

Perrott also completed a mental assessment, finding that Cornett had moderate limitations in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 97-99.) Perrott stated that Cornett's work-related mental abilities were, otherwise, not significantly limited. (R. at 97-99.)

On September 23, 2014, Dr. Sreeja Kadakkal, M.D., a state agency physician, completed a PRTF, finding that Cornett had mild restrictions on his activities of daily living; experienced only mild difficulties in maintaining social functioning; experienced moderate difficulties in maintaining concentration, persistence or pace; and had experienced no repeated episodes of extended-duration decompensation. (R. at 107-08.)

Dr. Kadakkal also completed a mental assessment, finding that Cornett had moderate limitations in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 109-11.) Dr. Kadakkal stated that Cornett's work-related mental abilities were, otherwise, not significantly limited. (R. at 110-11.)

The record shows that Dr. Eric Shrader, M.D., treated Cornett from 2009 to 2016[7] for ADD; malaise and fatigue; allergic rhinitis; actinic keratosis; a learning disability; anxiety and depression with OCD; autism spectrum disorder, ("ASD"); and auditory processing disorder.[8] (R. 34, 307-12, 323.) Treatment notes indicate that Cornett's anxiety and depression symptoms improved with medication. (R. at 34, 308.) In 2013, it was reported that Cornett's ADD was doing well without medication. (R. at 310.) In February 2014, Cornett complained of problems with anger management; impulsive behavior; ADD; and difficulty concentrating, prioritizing and staying on task. (R. at 309.) Cornett was started on medication for ADD. (R. at 309.) In September 2014, Cornett reported not doing well with the ADD medication; therefore, he stopped taking it. (R. at 308.) In October 2015, Dr. Shrader reported that Cornett was fairly stable on Lexapro, but he was not functional otherwise to be able to manage his own affairs and to have gainful employment. (R. at 323.) Dr. Shrader diagnosed actinic keratosis; ASD; intellectual impairment with learning disability; and allergic rhinitis, controlled. (R. at 323.)

---

[7] Dr. Shrader saw Cornett one time in 2009; two times in 2011; one time in 2013; two times in 2014; one time in 2015; and one time in 2016. (R. at 34, 307-12, 323.)

[8] Dr. Shrader referred Cornett to a neurologist for evaluation. (R. at 34.) However, the record does not indicate that Cornett was seen by a neurologist.

On March 26 and April 16, 2015, David T. Ellis, Psy.D., a licensed psychologist, evaluated Cornett. (R. at 314-22.) Cornett presented to the evaluation with his mother, who demonstrated a tendency to answer for Cornett. (R. at 316-17.) It was reported that Cornett did "much better" when taking his medications. (R. at 315.) Ellis reported that, when communicating with Cornett, he stared directly back at him without blinking. (R. at 316.) He reported that Cornett's distinct adult appearance did not match his level of emotional and mental development; he was not fully oriented, in that he did not keep track of specific things such as date and time; he displayed fairly significant cognitive limitations; his insight and judgment were "very limited;" his memory was intact, though lacking in detail; concentration and focus difficulties were noted; speech was stilted and was without a smooth flow or rhythm; and he was emotionally flat and blunted. (R. at 316-17.) The WAIS-IV was administered, and Cornett obtained a full-scale IQ score of 63; a verbal comprehension score of 58; a perceptual reasoning score of 82; a working memory score of 55; and a processing speed score of 76. (R. at 317-18.) The WIAT-III indicated that Cornett performed in the below average range in reading and in the low range for oral language, reading comprehension, written expression and math. (R. at 318-19.) The Gilliam Autism Rating Scale-Third Edition, ("GARS-3"), indicated that Cornett suffered from ASD. (R. at 320.) Ellis diagnosed ASD, moderate, with intellectual impairment; intellectual disability, mild; and specific learning disorder in math, reading and written expression. (R. at 320.) Ellis determined that Cornett could not function independently. (R. at 321.)

On January 10, 2017, Pamela S. Tessnear, Ph.D., a licensed clinical psychologist, evaluated Cornett at the request of Cornett's attorney. (R. at 10-20.) Tessnear noted that the Personality Assessment Inventory, ("PAI"), could not be

administered due to Cornett's poor comprehension and poor attention. (R. at 15.) Therefore, the Mini-Mental State Examination, ("MMSE"), Hamilton Anxiety Rating Scale, ("HAM-A"), and Hamilton Depression Rating Scale, ("HAM-D"), were administered. (R. at 15-16.) Results of the MMSE indicated that Cornett's cognitive functioning was intact. (R. at 15.) Results of the HAM-A and HAM-D indicated that Cornett suffered from no more than mild anxiety and mild depression. (R. at 16.) Tessnear reported that Cornett was appropriately dressed; his social interaction was awkward; cooperation was fair; communication was good; his rate and volume of speech were normal; he displayed limited insight into his actions or their impact on other people; he had poor insight, memory and his intellectual limitations contributed to poor judgment; he had poor remote history; his attention and concentration were poor; and his stream of thought was generally logical, though his speech was so impoverished that there was little opportunity to observe process of thought. (R. at 16-17.) Tessnear diagnosed ASD. (R. at 18.)

Tessnear opined that Cornett had the cognitive ability to follow simple instructions; he required assistance for regular work attendance because of the inability to provide his own transportation; he was unable to initiate activities, make independent decisions or adhere to time constraints; he required special supervision to stay on task due to distractibility; he was unable to function in a sustained manner due to needing redirection; he could not maintain concentration, persistence and pace over a sustained period; social functioning was impaired by poor judgment, thus, he could not work with the public or co-workers; and he would require a low-stress environment. (R. at 19-20.) She reported that Cornett was not able to manage his own funds. (R. at 19.) Tessnear reported that Cornett would not interact well with others and could be aggressive when agitated;

therefore, he could not work with the general public, co-workers or supervisors. (R. at 19.)

## III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2018). *See also Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983); *Hall v. Harris,* 658 F. 2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a)(4) (2018).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A § 1382c(a)(3)(A)-(B) (West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall,* 658 F.2d at 264-65; *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings.

This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-40 (4th Cir. 1997).

Cornett argues that the ALJ erred by failing to properly consider Ellis's opinion. (Memorandum In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 3-7.) Cornett also argues that the Appeals Council erred by refusing to consider the report and opinion of Tessnear. (Plaintiff's Brief at 7-11.)

The ALJ found that Cornett could perform only simple, routine and repetitive tasks that required only occasional interaction with co-workers and supervisors in an environment free from team work and over-the-shoulder supervision; that did not require interaction with the general public or fast-paced production requirements; and that required him to make no more than few, if any, work-related decisions. (R. at 44.)

Based on my review of the record, I do not find that substantial evidence exists to support the ALJ's finding as to Cornett's residual functional capacity, in that it did not take into account Cornett's problems with attention and concentration. Cornett's mother testified that Cornett had difficulty with task completion. (R. at 78.) She stated that Cornett had difficulty following direction unless someone was standing over him giving him one-step directions. (R. at 81.) School records show that Cornett had extreme difficulty staying focused and on

task, he required constant prompting to start and finish assignments, and he required repeated directions. (R. at 254, 297, 299.) In February 2014, Cornett complained of problems with anger management; impulsive behavior; ADD; and difficulty concentrating, prioritizing and staying on task. (R. at 309.) Ellis reported that Cornett was not fully oriented, in that he did not keep track of specific things such as date and time; he displayed fairly significant cognitive limitations; his insight and judgment were "very limited;" his memory was intact, though lacking in detail; concentration and focus difficulties were noted; speech was stilted and was without a smooth flow or rhythm; and he was emotionally flat and blunted. (R. at 316-17.) In October 2015, Dr. Shrader reported that Cornett was fairly stable on Lexapro, but he was not functional otherwise to be able to manage his own affairs and to have gainful employment. (R. at 323.) Dr. Shrader diagnosed ASD and intellectual impairment with learning disability. (R. at 323.) In addition, a state agency psychologist and a state agency physician opined that Cornett had moderate limitations in his ability to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 98, 110.) While Kinder is the only mental health expert of record who did not note significant problems with Cornett's attention and concentration, the ALJ stated that she was giving Kinder's opinions little weight. (R. at 46.)

Cornett also argues that the Appeals Council erred by refusing to consider the report and opinion of Tessnear. (Plaintiff's Brief at 7-11.) First, Cornett's contention that the Appeals Council did not consider the evidence from Tessnear is simply incorrect. The Appeals Council did consider this evidence in declining to review the ALJ's decision. (R. at 2.) That being the case, this court also must

consider this evidence in determining whether substantial evidence supports the ALJ's decision. *See Wilkins*, 953 F.2d at 96. While Tessnear's evaluation took place in January 2017, four months after the ALJ's decision, I find that it is relevant to Cornett's claim. Tessnear diagnosed ASD, and her assessment concerning Cornett's work-related abilities stem from that diagnosis. (R. at 18-20.)

Tessnear reported that Cornett had awkward social interaction; he displayed limited insight into his actions or their impact on other people; he had poor insight and his intellectual limitations contributed to poor judgment; he had poor remote memory; his attention and concentration were poor; and his stream of thought was generally logical, though his speech was so impoverished that there was little opportunity to observe process of thought. (R. at 16-17.) Tessnear opined that Cornett was unable to initiate activities, make independent decisions or adhere to time constraints; he required special supervision to stay on task due to distractibility; he was unable to function in a sustained manner due to needing redirection; he could not maintain concentration, persistence and pace over a sustained period; social functioning was impaired by poor judgment, thus, he could not work with the public or co-workers; and he would require a low-stress environment. (R. at 19-20.)

While the ALJ did not have Tessnear's opinion, it is similar to the findings of Ellis and Dr. Shrader, in that Cornett would require special supervision to function independently. (R. at 19-20, 321, 323.) While the record shows that Cornett was fairly active, many of the cited activities, including playing video games, fishing, driving his ATV and performing light household chores, say little about Cornett's ability to sustain work for an eight-hour workday without special instructions or additional supervision. (R. at 60, 71, 224, 226, 316.) The fact that

Cornett could perform a few activities by himself does not outweigh the substantial evidence from his school records, his doctor's opinions and the testimony of D. Cornett showing that he would require additional supervision or special instruction. *See Davis v. Comm'r of Soc. Sec.*, 2017 WL 4052827, at *7 (W.D. Va. Aug. 22, 2017) (treating a need for supervision as a functional limitation).

Based on the above, I do not find that substantial evidence exists to support the ALJ's finding as to Cornett's residual functional capacity. Thus, I do not find that substantial evidence exists in the record to support the ALJ's finding that Cornett was not disabled. I will vacate the Commissioner's decision and remand Cornett's claim to the Commissioner. An appropriate Order and Judgment will be entered.

DATED: March 25, 2019.

s/ *Pamela Meade Sargent*<br>UNITED STATES MAGISTRATE JUDGE